Wayne BENNETT Sr.; Betty Bennett; Wayne Bennett Jr.; Edward M. Bennett; Wayne M. Bennett Sr. Family Trust *v.* LONOKE BANC-SHARES, INC.; Neil Bennett Sr.; Neil Bennett Jr.; David Estes; Joe Melton; First State Bank

03-258                                                            155 S.W.3d 15

Supreme Court of Arkansas
Opinion delivered March 11, 2004

*James Henry Penick III*, for appellants.

*James Michael Stuart*, for appellees.

*James Leon Holmes, Jerald Clifford McKinney II*, and *Robert M. Cearley, Jr.*, for Arkansas Community Bankers Ass'n.

BETTY C. DICKEY, Chief Justice. This is a dispute between two families over controlling interest in Lonoke Bancshares, Inc. (LBI), an Arkansas bank holding company. Appellants, the Wayne Bennett family, maintain that the Arkansas Banking Code of 1997, codified at Ark. Code Ann. § 23-48-101, *et seq.*, controls whether LBI is required to use cumulative voting. Appellees, the Neil Bennett group, assert that the Arkansas Business Corporation Act of 1987, codified at Ark. Code Ann. § 4-27-101, *et seq.*, controls whether LBI is required to use cumulative voting. Both parties filed summary judgment motions, and appellants filed a request for additional discovery under Ark. R. Evid. 56(f). The trial court granted appellees' motion for summary judgment and denied appellants' discovery request. We affirm.

Wayne Bennett Sr. formed LBI in 1989 under the Arkansas Business Corporation Act of 1987. The Wayne Bennett family collectively own approximately 45% of LBI. LBI owns 100% of the stock in First State Bank of Lonoke. At a shareholder meeting on January 11, 2000, Wayne Bennett Sr. attempted to expand the 2000 LBI Board from six members to seven members by adding his son, Mac Bennett, to the Board. At that meeting, they discussed LBI's by-laws as to cumulative, non-cumulative, and plurality voting in the election of directors. The Wayne Bennett family left the meeting, and the Neil Bennett Jr. motion to maintain the Board at six members was approved by the remaining shareholders.

On February 7, 2002, the Wayne Bennett family filed a complaint in the Lonoke County Circuit Court, alleging the Arkansas Banking Code of 1997 mandated cumulative voting for LBI shareholders. They also argued that Neil Bennett's amendment eliminating cumulative voting in any form, is unlawful, invalid, and has no force nor effect. Appellants argued that the Neil Bennett Amendment should be declared illegal and that the Wayne Bennett Amendment be deemed valid and effective as consistent with the Arkansas Banking Code of 1987. On March 1, 2002, appellees answered the complaint stating that the Arkansas Banking Code of 1997 does not create a right of cumulative voting in this case because: (1) LBI was incorporated under the Business Corporation Act of 1987, Ark. Code Ann. § 4-27-101, *et seq.*, and (2) the definition of "bank" in the Arkansas Banking Code of 1997 does not include bank holding companies, which are separately defined.

On April 4, 2002, appellants, the Wayne Bennett family, served their initial discovery on the appellees, and on April 12, 2002, appellees filed a motion for summary judgment arguing that LBI was a bank holding company organized under the Arkansas Business Corporation Act of 1987; therefore, it was not required to elect directors using cumulative voting. On April 19, 2002, appellees responded to the interrogatories and requests for production. The appellants then filed a cross-motion for summary judgment. The Neil Bennett group delivered a letter to the trial court requesting a hearing. The trial court conducted a hearing on July 2, 2002, in which the trial court authorized the parties to file additional briefs.

On October 29, 2002, the trial court granted appellees' motion for summary judgment. The trial court found "that the 1997 Banking Code, as it applies to Lonoke Bancshares, Inc., does not mandate that bank holding companies permit cumulative voting for corporate directors nor does it mandate that LBI change its bylaws to allow cumulative voting for its directors." The Wayne Bennett family bring three points on appeal: (1) the trial court erred in denying appellants' motion for continuance and stay pursuant to Ark. R. Civ. P. 56(f); (2) the Arkansas Banking Code of 1997 applies; and (3) the trial court erred in granting appellees' motion for summary judgment because appellees' construction of the Banking Code would violate Article 12, § 6, of the Arkansas Constitution.

*Rule 56(f)*

Appellants argue that the trial court erred in denying their separate motion for continuance and stay pursuant to Ark. R. Civ. P. 56(f). Rule 56(f) states:

> Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

A trial court has broad discretion in matters pertaining to discovery and the exercise of that discretion will not be reversed by this court absent an abuse of discretion that is prejudicial to the appeal party. *Loghry v. Rogers Group, Inc.*, 348 Ark. 369, 72 S.W.3d 499 (2002); *Alexander v. Flake*, 322 Ark. 239, 910 S.W.2d 190 (1995); *Rankin v. Farmers Tractor & Equipment Co., Inc.*, 319 Ark. 26, 888 S.W.2d 657 (1994); *Jenkins v. International Paper Co.*, 318 Ark. 663, 887 S.W.2d 300 (1994). In order for this court to reverse the trial court's denial of a continuance, the appellant must show that the trial court abused its discretion and that the additional discovery would have changed the outcome of the case. *Alexander, supra.*

The Wayne Bennett family argue that the trial court erred in denying the motion for continuance because there were issues of material fact to be resolved; however, they also filed a cross-motion for summary judgment. Appellants focus on the pace of the case and the fact that within sixty days the trial court determined that the case was ready for trial.

Appellants cite to *First National Bank v. Newport Hospital*, 281 Ark. 332, 663 S.W.2d 742 (1984), where the defendants moved for summary judgment on the basis of the pleadings, a deposition from a physician, and affidavits of physicians that they had used their best judgment and the same care and skill of other doctors in similar localities in their diagnosis and treatment. The defendants objected to the plaintiffs' interrogatories on the grounds that they were entitled to summary judgment which would render the plaintiffs' discovery moot. *Id.* The trial court found no genuine issue of material fact remained and granted summary judgment. *Id.* On appeal, this court held that the trial court erred in granting

summary judgment before the appellant was able to complete discovery and develop, if obtainable, the necessary proof. *Id.*

However, in this case, there was no indication that the question before the trial court necessitated any further inquiry into the surrounding facts and circumstances. The facts are different from those of *First National Bank v. Newport Hospital, supra,* in that here appellants have failed to demonstrate how the additional discovery would have changed the trial court's ruling. Therefore, the trial court did not abuse its discretion in denying appellants' motion for continuance pursuant to Rule 56(f).

### Cumulative Voting

The Wayne Bennett family argue that the Arkansas Banking Code of 1997 requires that all financial institutions be operated in accordance with the Banking Code which, under Ark. Code Ann. § 23-45-102(21), includes all bank holding companies and state banks. The trial court found in part:

> Thus, LBI had previously accrued the right of non-cumulative voting under the Business Corporation Act at the time of its incorporation in 1989 and the 1997 Banking code did not repeal or remove that right. The Court believes that a [sic] institution is permitted to change its by-laws to permit cumulative voting. Here, LBI had not changed its 1989 by-laws or articles to permit cumulative voting.

The trial court also stated that it believed that, "although the Arkansas Banking Code of 1997 was an effort to 'clean up' banking legislation over the past fifty years or more, it was not intended to make drastic changes or amend the general rule of non-cumulative voting under the Business Corporation Act of 1987." Appellants argue that, in interpreting the Arkansas Banking Code, the trial court violated the "most basic tenets of statutory construction" and should have considered public policy, legislative intent, and the comprehensive language of the statute. We disagree and affirm the trial court.

The Arkansas Banking Code of 1997, Ark. Code Ann. § 23-45-103(a), mandates that all financial institutions must be operated in accordance with the Banking Code. Ark. Code Ann. § 23-45-102(21) includes all bank holding companies and state banks. Appellants contend that this requires LBI and First State Bank, Lonoke, to implement and enforce cumulative voting in

accordance with Ark. Code Ann. § 23-48-320(2)(A). However, LBI was organized under the Business Corporation Act of 1987, which does not require cumulative voting unless provided for in the articles of incorporation.

■ We review issues of statutory interpretation de novo, as it is for this court to decide what a statute means. *Fields v. Marvell School District*, 352 Ark. 483, 102 S.W.3d 502 (2003); *Clayborn v. Bankers Standard Ins. Co.*, 348 Ark. 557, 75 S.W.3d 174 (2002); *Fewell v. Pickens*, 346 Ark. 246, 57 S.W.3d 144 (2001). In this respect, we are not bound by the trial court's decision; however, in the absence of a showing that the trial court erred, its interpretation will be accepted as correct on appeal. *Fields, supra; Harris v. City of Little Rock*, 344 Ark. 95, 40 S.W.3d 214 (2001); *Norman v. Norman*, 342 Ark. 493, 30 S.W.3d 83 (2000).

■ The basic rule of statutory construction is to give effect to the intent of the legislature, and, when a statute is clear, it is given the plain meaning. *City of Dover v. City of Russellville*, 352 Ark. 299, 100 S.W.3d 689 (2003). When the language of a statute is plain and unambiguous, there is no need to resort to rules of statutory construction. *Arkansas Department of Human Services v. Collier*, 351 Ark. 506, 95 S.W.3d 772 (2003). A statute is ambiguous only where it is open to two or more constructions, or where it is of such obscure or doubtful meaning that reasonable minds might disagree or be uncertain as to its meaning. *ACW, Inc. v. Weiss*, 329 Ark. 302, 947 S.W.2d 770 (1997). When a statute is clear, however, it is given its plain meaning, and this court will not search for legislative intent; rather, that intent must be gathered from the plain meaning of the language used. *Ford v. Keith*, 338 Ark. 487, 996 S.W.2d 20 (1999); *State v. McLeod*, 318 Ark. 781, 888 S.W.2d 639 (1994). This court is very hesitant to interpret a legislative act in a manner contrary to its express language, unless it is clear that a drafting error or omission has circumvented legislative intent. *Id.*

Appellants, the Wayne Bennett family, argue that mandatory cumulative voting rights of shareholders of both "banks" and "bank holding companies" were acknowledged in Ark. Code Ann. § 23-30-101 (Supp. 1987) (repealed). However, Act 89, § 3, of 1997 repealed Chapters 30-34, Title 23 of the Arkansas Code of 1987 in its entirety. Appellants further assert a mandatory statutory shareholder right to cumulative voting under Ark. Code Ann.

§ 23-48-320(2)(A), applicable to LBI, which would allow a shareholder to cumulate his votes for any one candidate.

The Arkansas Banking Code, Ark. Code Ann. § 23-48-320(a)(2)(A)&(B), provides:

> (2)(A) Subject to the provisions of subsection (d) of this section, in electing directors at meetings of stockholders, each stockholder of a state bank shall have a right to vote the number of shares owned by him for as many persons as there are directors to be elected, or to cumulate the shares so as to give one (1) candidate as many votes as the number of directors multiplied by the number of shares of stock held by him shall equal.

> (B) The stockholder may distribute his votes on the same principle among as many candidates as he shall see fit, unless it is provided otherwise in the articles of incorporation or the bylaws of the state bank.

Further, Ark. Code Ann. § 23-45-102(a)(39) defines a "state bank" as:

> (A) A corporation created pursuant to either Acts 1913, No. 113, or Acts 1969, No. 179, or pursuant to any predecessor or successor act or acts of either of the foregoing, and existing and authorized under the laws of this state on May 30, 1997, to engage in a general commercial banking business; and

> (B) A corporation organized under the provisions of this chapter and authorized thereunder to engage in a general commercial banking business.

An Arkansas "bank holding company" is separately defined as "a bank holding company that controls one (1) or more state banks." Ark. Code Ann. § 23-45-102(a)(3).

■ Because "bank holding company" was not included within Ark. Code Ann. § 23-48-320 governing cumulative voting, bank holding companies are not subject to the cumulative voting provision of that section. Had the General Assembly intended to subject bank holding companies to cumulative voting, it could have included the term "bank holding company" in § 23-48-320, or included a similar provision in the Arkansas Business Corporation Act, subchapter 4, dealing with bank holding companies.

Here, LBI was organized under the Arkansas Business Corporation Act of 1987, which does not require cumulative voting unless provided for in the company's articles of incorporation. LBI is not a state bank because LBI was not created pursuant to either the Banking Code of 1997 or any of the listed acts in § 23-45-102(a)(39). LBI has never been authorized under Arkansas law to engage in the "general commercial banking business." In addition, LBI's articles of incorporation specifically state the nature of LBI is to "engage in the business of the bank holding company."

■ Therefore, LBI's voting procedure is governed by the statutory provision under which it was created, the Arkansas Business Corporation Act of 1987. The relevant provision states, "shareholders do not have a right to cumulate their votes for directors unless the Articles of Incorporation so provide." Ark. Code Ann. § 4-27-728. Here, LBI's Articles of Incorporation contain no such provision for cumulative voting. Appellants' complaint for declaratory judgment was, therefore, properly dismissed.

### Arkansas Constitution Article 12, § 6

The Wayne Bennett family argue that the trial court's reading of Ark. Code Ann. § 23-48-320 unconstitutionally deprived them of a vested right to cumulative voting. Ark. Const. Article 12, § 6, provides:

> Corporations may be formed under general laws, which laws may, from time to time, be altered or repealed. The General Assembly shall have the power to alter, revoke or annul any charter of incorporation now existing and revocable at the adoption of this Constitution, or any that may hereafter be created, whenever, in their opinion, it may be injurious to the citizens of this State, in such manner, however, that no injustice shall be done to the corporators.

■ In considering constitutional issues, this court is obligated to make independent examination of the entire record to assure constitutional compliance with a heightened standard. *Southall v. Little Rock Newspapers*, 332 Ark. 123, 964 S.W.2d 187 (1998). All doubts pertaining to a statute are resolved in favor of constitutionality. *Ward v. Priest*, 350 Ark. 345, 86 S.W.3d 884 (2002); *Skelton v. Skelton*, 339 Ark. 227, 5 S.W.3d 2 (1999). Where a constitutional construction is possible, we are compelled to uphold the validity of the statute under attack. *Skelton, supra.*

■ According to the Wayne Bennett family, Ark. Code Ann. § 23-45-103(a) requires that all "financial institutions" be operated in accordance with the 1997 Banking Code, without exception. Appellants cite to *Trustees of Darmouth College v. Woodward*, 17 U.S. 518 (1819), where the United States Supreme Court ruled that the charter between the state and a corporate entity represents a binding contract, whereby the state cannot amend it by subsequently changing the law unless the state reserves the right to make amendment and changes. However, most states, including Arkansas, have adopted a constitutional provision granting the state the power and authority to amend the business laws and effectively change the charters of corporations. Ark. Const. Art. 12, § 6, Ark. Code Ann. § 4-27-102. In *Phillips Petroleum Co. v. Jenkins*, 297 U.S. 629 (1936), the United States Supreme Court concluded that Arkansas' Article 12, § 6, gives the General Assembly great leeway to amend corporate charters through new legislation. The United States Supreme Court stated, "[t]he reservation of power to amend is a part of the contract between the state and the corporation." *Jenkins*, 297 U.S. at 634.

■ In this case, eliminating a requirement for cumulative voting does not render LBI ineffectual nor does it substantially impair the object of LBI's incorporation. The General Assembly has substantial leeway to amend charters even if the public interest is not threatened. *Arkansas Stave Co. v. State*, 94 Ark. 27, 125 S.W. 1001 (1910). Therefore, the reservation-of-powers clause becomes a part of every corporate charter by operation of law, and every shareholder implicitly consents to the state's ability to amend, alter, or repeal any corporate law. Furthermore, according to its articles of incorporation, LBI was organized under the Arkansas Business Corporation Act; therefore, repealed provisions of the Banking Code are not relevant.

Affirmed.

THORNTON, J., not participating.