WAYMOND M. BROWN, Judge
Appellants appeal from the circuit court's denial of their motion to compel arbitration. On appeal, they argue that (1) under Arkansas law, the claims asserted on behalf of Glenda Sue Talley are governed by an arbitration agreement because Glenda Sue was the intended third-party *494 beneficiary of the arbitration agreement; and (2) the claims asserted in this case fall within the broad scope of the arbitration agreement. We affirm.
On June 28, 2010, Glenda Sue signed a power of attorney stating the following:
I constitute and appoint as my priority power of attorney, Jessie Talley, my husband; however, if he cannot serve or cannot continue to serve, then I hereby nominate and appoint second priority, my son, Jesse Alan Talley; however, if he cannot serve or cannot continue to serve, then I hereby nominate and appoint third priority, my daughter, Peggy Sue Talley-McMillon to be my attorney-in-fact for me in my name and in my place, to exercise this power of attorney at any time.
Glenda Sue was admitted as a resident of Pine Hills Health & Rehabilitation LLC (Pine Hills) on March 10, 2012. At the time of her admission, Glenda Sue suffered from Alzheimer's and dementia, among other things, resulting in her mental incapacity. Admission documents included an arbitration agreement. The arbitration agreement was optional as a paragraph contained therein, being the second paragraph above the signature block, states that the resident understands "that execution of the Agreement is not a precondition to admission or to the furnishing of services to the Resident by the Facility[.]" Tonja Belt, daughter of Glenda Sue, signed the agreement as the "Responsible Party." On the following page, the agreement requested that "[i]f the resident is unable to consent or sign this provision because of physical disability or mental incompetence or is a minor and a Responsible Party is signing this provision[,]" the responsible party should identify his or her relationship to the resident. Belt wrote "Daughter" in the space provided. She did not check where the agreement stated, "A copy of my guardianship papers, durable power of attorney or other documentation, has been provided to the Facility and is attached." Glenda Sue did not sign the agreement.
Jesse Alan filed a complaint against the facility itself and certain administrators that worked at the facility, on Glenda Sue's behalf[1] as an incapacitated person, on April 15, 2016, asserting claims of ordinary negligence for failures in ordinary duties of care and medical-malpractice negligence for failures in professional standards of care of a long-term care facility. The appellants filed their answer on May 19, 2016, generally denying all material allegations in the complaint and asserting that the complaint should be dismissed for a number of reasons including failure to state facts upon which relief can be granted.
On November 15, 2016, appellants filed a motion to compel arbitration and separately filed brief in support asserting that because Glenda Sue was a third-party beneficiary of a valid, enforceable arbitration agreement between appellants and Tonja Belt, Jesse Alan should be ordered to submit to arbitration in accordance with that agreement. Jesse Alan responded on November 30, 2016, denying that the arbitration agreement was valid or binding against Glenda Sue as Belt was not "the Resident, or the person duly authorized by the Resident" to execute the agreement and accept its terms, a requirement of the arbitration agreement. Appellants replied to Jesse Alan's response on December 13, 2016.
*495 A hearing on the matter was scheduled for February 7, 2017; however, it was canceled on February 6, 2017, and the circuit court entered an order on the parties' motions and briefs alone, without a hearing, on February 17, 2017. Therein, it stated the following:
1. It is undisputed that Tonja Belt lacked legal authority to act in a representative capacity to bind Glenda Talley to the arbitration agreement. Accordingly, no valid agreement to arbitrate exists between Glenda Talley and [Appellants].
....
3. For the reasons fully argued in plaintiff's response to defendants' motion, and considering all of the arguments the defendants raised in their motion, supporting brief and reply to plaintiff's response, the Court finds that no valid agreement exists between Tonja Belt in her individual capacity and [Appellants]. In addition, the Court finds that Glenda Sue Talley did not receive any benefit from Tonja Belt signing the optional arbitration agreement. Accordingly, the Court finds that Glenda Sue Talley was not an intended third-party beneficiary of a valid arbitration agreement between Tonja Belt and defendants.
4. The Court has considered all of the arguments that the defendants have raised in support of their motion, supporting brief and reply, and makes a general finding that Plaintiff's arguments and contentions regarding the application of the third party beneficiary doctrine to the facts of this case are well taken and that the motion to compel arbitration is denied.
This timely appeal followed.
An order denying a motion to compel arbitration is an immediately appealable order.[2] We review a circuit court's order denying a motion to compel arbitration de novo on the record.[3] We decide the issues on appeal using the record developed in the circuit court without deference to the circuit court's ruling.[4] We are not bound by the circuit court's decision, but in the absence of a showing that the circuit court erred in its interpretation of the law, we will accept its decision as correct on appeal.[5] Further, we recognize that arbitration is strongly favored in Arkansas.[6]
The appellants' first argument before this court is that the claims asserted on Glenda Sue's behalf are governed by the arbitration agreement because she is an intended third-party beneficiary of the arbitration agreement signed by Belt in her individual capacity. In support of this argument, appellants assert that (1) a valid contract existed between Pine Hills and Belt, in her individual capacity;[7] and (2) the arbitration agreement between Pine Hills and Belt was made for the benefit of Glenda Sue. The circuit court specifically found that Belt "lacked legal authority to act in a representative capacity to bind *496 Glenda Talley to the arbitration agreement"; and thereby, found that no valid agreement existed between Talley and appellants. We first consider this finding of the circuit court, although we note that appellants do not appear to specifically challenge this finding.
There are two elements that are necessary in order to apply the third-party beneficiary doctrine under Arkansas law: (1) there must be an underlying valid agreement between two parties, and (2) there must be evidence of a clear intention to benefit a third party.[8] Although an arbitration provision is subject to the Federal Arbitration Act, the question of whether a dispute should be submitted to arbitration is a matter of contract construction, and we look to the language of the contract that contains the agreement to arbitrate and apply state-law principles to decide whether the parties' agreement is valid.[9] In Arkansas, the same rules of construction apply to arbitration agreements as apply to agreements in general.[10] The essential elements for an enforceable arbitration agreement are (1) competent parties, (2) subject matter, (3) legal consideration, (4) mutual agreement, and (5) mutual obligation.[11]
When a third party signs an arbitration agreement on behalf of another, as was done in this case, the court must determine whether the third party was clothed with the authority to bind the other person to arbitration.[12] The burden of proving an agency relationship lies with the party asserting its existence.[13] Not only must the agent "agree to act on the principal's behalf and subject to [her] control," but the principal must also indicate that the agent is to act for her.[14]
Appellants concede that they have never argued, and therefore, are not now arguing that Belt had agency authority to sign for Glenda Sue in a representative capacity; accordingly, they put forth no evidence that Belt had the authority to bind Glenda Sue. However, we note that the evidence before the circuit court was that Glenda Sue, who could not sign for herself due to multiple mental conditions, executed a valid power of attorney prior to her mental incapacity granting Jesse Alan her power of attorney. Belt listed Glenda Sue as a party to the optional arbitration agreement and signed the same without the authority of Glenda Sue, who could not give such authority due to her mental incapacity, or the authority of Jesse Alan, the *497 person to whom Glenda Sue had chosen to delegate such decision-making for her and who specifically asserts that Belt did not have any authority to sign for Glenda Sue. Because Belt had no representative authority, she could not bind Glenda Sue to an arbitration agreement with appellants. Accordingly, we hold that there was no error with the circuit court's finding that no valid arbitration agreement existed between Glenda Sue and appellants.
Appellants argue that there was a binding contract between them and Belt in her individual capacity. Appellee argues that "[t]he identification of the 'Responsible Party' in the introductory paragraph makes clear that the Responsible Party is not an independent party to the agreement" but someone whose interests align with that of Glenda Sue, an asserted party to the agreement; the responsible party has no separate interests from the resident. The only evidence regarding such a claim is the arbitration agreement itself. The arbitration agreement states that it "is entered into between Pine Hills Health and Rehabilitation, LLC (the "Facility") and Glenda Talley (the Resident or the Responsible Party)[.]"[15] This makes clear that Glenda Sue, not Belt, is the asserted party to the arbitration agreement as it only allows for the resident or the responsible party to be a party to the agreement and Glenda Sue's name is listed.
Accordingly, Belt is not a party to the agreement as she named Glenda Sue as a party to the arbitration agreement, though Belt had no authority to do so. We hold that the circuit court did not err in finding that Belt did not intend to sign in her individual capacity. Since she was not signing in her individual capacity, no valid arbitration agreement existed between the appellants and Belt.
Because there must first be a valid agreement to arbitrate between two parties when determining whether to apply to the third-party-beneficiary doctrine[16] and when determining whether a circuit court erred in denying a motion to compel,[17] and we hold that a valid arbitration agreement does not exist, we do not address appellants' second argument that this dispute falls within the scope of the arbitration agreement as our decision on their first argument renders appellants' second argument moot.
Affirmed.
Gladwin and Whiteaker, JJ., agree.

It is not clear what became of Jessie Talley, whom Glenda Sue gave first priority on her power of attorney; however, Jesse Alan asserts in the complaint that he is acting pursuant to his power of attorney of Glenda Sue and no one contests the validity of his appointment.

Madison Cos., LLC v. Williams , 2016 Ark. App. 610, at 5, 508 S.W.3d 901, 905 (citing Ark. R. App. P.-Civil 2(a)(12); see also Ark. Code Ann. § 16-108-228(a)(1) (Repl. (2016)).

Id. (citing HPD, LLC v. TETRA Techs., Inc. , 2012 Ark. 408, at 5, 424 S.W.3d 304, 307 ).

Id. (citing Wyatt v. Giles , 95 Ark. App. 204, 205, 235 S.W.3d 552, 554 (2006) ).

Id. (citing Diamante v. Dye , 2013 Ark. App. 630, at 4, 430 S.W.3d 196, 199 ).

Id. (citing Courtyard Gardens Health & Rehab., LLC v. Arnold , 2016 Ark. 62, at 6, 485 S.W.3d 669, 673 ).

Appellants state in their arguments that they have "never asserted that Glenda Sue Talley signed the arbitration or that Tonja Belt, her daughter, had agency authority to sign in a representative capacity for Ms. Talley."

Progressive Eldercare Servs.-Chicot, Inc. v. Long , 2014 Ark. App. 661, at 4, 449 S.W.3d 324, 327 (citing Andrews v. Victor Metal Prods. Corp. , 239 Ark. 763, 394 S.W.2d 123 (1965) ; Perry v. Baptist Health , 358 Ark. 238, 189 S.W.3d 54 (2004) ).

S. Pioneer Life Ins. Co. v. Thomas , 2011 Ark. 490, at 3-4, 385 S.W.3d 770, 772 (citing Tyson Foods, Inc. v. Archer , 356 Ark. 136, 147 S.W.3d 681 (2004) ); see Bank of the Ozarks, Inc. v. Walker , 2014 Ark. 223, at 4, 434 S.W.3d 357, 360 (citing DIRECTV, Inc. v. Murray , 2012 Ark. 366, at 3, 423 S.W.3d 555, 559 ).

Id. (citing Alltel Corp. v. Sumner , 360 Ark. 573, 576, 203 S.W.3d 77, 79 (2005) ).

Reg'l Care of Jacksonville, LLC v. Henry , 2014 Ark. 361, at 6-7, 444 S.W.3d 356, 360 (citing Bank of the Ozarks, Inc. v. Walker , 2014 Ark. 223, 434 S.W.3d 357 ).

Broadway Health & Rehab, LLC v. Roberts , 2017 Ark. App. 284, at 4, 524 S.W.3d 407, 410 (citing Courtyard Gardens Health & Rehab., LLC v. Williamson , 2016 Ark. App. 606, at 3, 509 S.W.3d 685, 688 ).

Id. at 5, 524 S.W.3d at 410 (citing Courtyard Gardens Health & Rehab. v. Quarles , 2013 Ark. 228, at 7, 428 S.W.3d 437, 443 ).

Id. (citing Quarles , 2013 Ark. 228, at 6, 428 S.W.3d at 442-43 (quoting Evans v. White , 284 Ark. 376, 378, 682 S.W.2d 733, 734 (1985) )).

(Emphasis added.)

See Broadway Health & Rehab, LLC v. Roberts , 2017 Ark. App. 284, at 7, 524 S.W.3d 407, 412 (citing Progressive Eldercare Servs.-Chicot, Inc. v. Long , 2014 Ark. App. 661, at 4, 449 S.W.3d 324, 327 ).

See Courtyard Gardens Health & Rehab., LLC v. Sheffield , 2016 Ark. 235, at 3, 495 S.W.3d 69, 71 (citing HPD, LLC v. TETRA Techs., Inc. , 2012 Ark. 408, at 6, 424 S.W.3d 304, 308 ).