Jessie COLLINS *v.* Nelia CUNNINGHAM,
Lyda Laneville, Julia Mixon, and Sallie Dievendorf

CA 00–150                                          29 S.W.3d 764

Court of Appeals of Arkansas
Division IV
Opinion delivered October 25, 2000

*Dover & Dixon, P.A.,* by: *Thomas S. Stone,* for appellant.

*Daggett, Van Dover, Donovan & Perry, PLLC,* by: *Jesse B. Daggett,* for appellees.

ANDREE LAYTON ROAF, Judge. Jesse Collins appeals from an order of the Lee County Circuit Court granting summary judgment in favor of appellees Nellia Cunningham, Lyday Laneville, Julia Mixon, and Sallie Dievendorf, partners in a farming operation, W.D. Daggett Farms, hereinafter WDDF. In granting summary judgment, the trial court dismissed Collins's counterclaim in which he sought the return of rents that he had paid to lease pasture land. On appeal, Collins argues that the trial court erred in finding that he had to be a third-party beneficiary to the permit between the St. Francis Levee District, the title holder of the land in question that Collins sublet from WDDF, in order to sustain his claim, and asserts that pursuant to the terms of the permit, the sublease made the permit void and WDDF therefore had no legal right to charge and keep his rental payments for the property. We affirm.

The Board of Directors of the St. Frances Levee District is a local cooperating agency created to facilitate the maintenance of flood control works constructed with federal funds along the Mississippi and St. Francis Rivers. In 1936, the Board adopted a "pasturage" system for levy district land maintenance. Under this system, which was reaffirmed in 1964, adjoining landowners are awarded "pasturage right-of-way" contracts to use the levy right-of-ways for pasturing horses or cows in exchange for a nominal, refundable deposit that secured the farmers' obligation to keep the land mowed and bush-hogged. These permits, by their express terms, were personal in nature, reciting that the rights that they granted applied only to the person named as lessee, were not transferable, and that subleasing or assignment of this agreement to others without the written consent of the Lessor rendered the permit "null and void."

WDDF received a ten-year pasturage right-of-way contract on April 20, 1983, for a refundable $200 deposit. The contract concerned a strip of land one mile and three-quarters in length. The preamble of the 1983 contract stated that "adequate measures should be taken to prevent the use of levee pasture as rental property by those holding pasture leases." In 1990, WDDF received a new ten-year contract, entitled "permit," providing for essentially the same terms, but apparently absent the preamble. However, on January 7, 1987, WDDF had begun leasing the land to Collins for $2,500 per year, pursuant to a written five-year lease. When that lease expired, Collins continued to lease the land pursuant to an oral lease of farm land until 1996, at $3,000 per year. The written lease between WDDF and Collins recited that WDDF was the "owner of a lease from the St. Francis Levee Board" and that the Lessee (Collins) "agrees that he is familiar with the terms of said Levee Board lease and that he will keep the levee clipped in compliance therewith and abide by the other provisions of said lease. A violation of that lease shall be deemed as a violation of this lease also."

In 1996, Collins stopped paying rent, and WDDF filed an action against him for unlawful detainer. Collins filed a counterclaim for the return of rent that he had paid to WDDF, asserting that because the sublease rendered the permit null and void, WDDF had no right to the rents that he had paid. Eventually, Collins surrendered possession of the levee district land, but continued to pursue his counterclaim. The levee district was never made a party to this action.

WDDF moved for summary judgment, arguing that Collins had no "standing" to complain about any alleged violation of the lease agreement between WDDF and the levee district. The trial court granted summary judgment, finding in its letter opinion that in order for Collins to maintain a cause of action against WDDF, the permit had to be construed as having been made for the benefit of Collins as a third party and that no such intention could be found in the record.

On appeal, Collins argues that the trial court erred in finding that he must be a third-party beneficiary of the permit between WDDF and St. Francis Levee District to sustain his claim that the permit was void, and therefore WDDF has no legal right to charge and keep his rental payments. He contends that WDDF's right to

the land in question derived solely from the permit, and pursuant to the express terms of the permit, the sublease of the land rendered the permit null and void. Citing *Bush v. Bourland*, 206 Ark. 275, 174 S.W.2d 936 (1943), he asserts that his rights as a subtenant cannot rise any higher than the rights of the principal tenant, and that if the sublease voided the permit, WDDF had no right to charge him rent for the property because it had no interest to convey.

■■ We do not agree that the trial court erred by finding that Collins was not a third-party beneficiary of the agreement between WDDF and the levee district. In *Thomas Mfg. Co. v. Prather*, 65 Ark. 27, 44 S.W. 218 (1898), the supreme court held that in order for a stranger to a contract to sue upon it, there must be "first, an intent by the promisee to secure some benefit to the third party; and, second, some privity between the two; — the promisee and the party to be benefitted, — and some obligation or duty owing from the former to the latter which would give him a legal or equitable claim to the benefit of the promise, or an equivalent from him personally." *See also West v. Norcross*, 190 Ark. 667, 80 S.W.2d 67 (1935) (holding sharecroppers not entitled to maintain action against their landlord to enjoin him from evicting them on a theory that they were beneficiaries of a cotton-acreage-reduction contract between the landlord and the federal government which provided that the landlord/producer shall permit all tenants to continue occupancy of houses on its farm rent free, where there was no obligation on the sharecroppers to remain on the land and no consideration moving from them); *Hopkins v. Ives*, 263 Ark. 565, 566 S.W.2d 147 (1978)(holding real estate agent not entitled to sue reneging buyer for commission he would have earned if the sale had been consummated, because the contract was not for his benefit). Here there is nothing in the agreements themselves to suggest that the proscription against the use of the levee pasture as rental property was intended to benefit anyone other than the levee district. The "free" pasturage permits were available only to owners of the property immediately adjoining the pasturage areas and were expressly stated to be for a mutual benefit of the levee board, which had a need to properly maintain and mow the levee pasturage, and the adjoining landowners who would then have the free use of additional acreage adjoining their property in return for performing this service. Moreover, Collins's sublease with WDDF

provided that he agreed that he was familiar with the terms of the Levee Board lease.

██ ██ We are also not persuaded by Collins's argument that the trial court erred in finding that he *must be* a third-party beneficiary in order to take advantage of the language contained in WDDF's permits voiding them upon transfer or assignment. Collins's entire argument hinges on the construction of WDDF's permits as being "void." Collins argues that as a subtenant his rights cannot rise any higher than those of the principal tenant and that because WDDF violated the terms of its permit, the permit was "void." Notably absent from this argument are the reasons why that entitles Collins to recover rents already paid to WDDF for his occupancy of the property. We agree that Collins cannot have any greater rights than WDDF; however, in this case, that right is the right to occupy the property. Furthermore, while WDDF did not have the right to sublease the property, neither did Collins. Collins never directly argues that because WDDF had the use of the pasturage rent-free, then he should also; rather, he contends only, unconvincingly and without citation of authority, that WDDF's permit was "void" and therefore it had no right to charge him rent, despite the fact that there was apparently no action taken by the levee board to cancel the permit and he remained in possession of the property from 1987 through 1996. We do not address an argument in the absence of citation to authority or convincing argument. *Presley v. Presley*, 66 Ark. App. 316, 989 S.W.2d 938 (1999).

Affirmed.

CRABTREE and JENNINGS, JJ., agree.